J-A35028-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.F.M., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| C.P., | |
| Appellant | No. 910 WDA 2015 |

Appeal from the Order May 12, 2015
In the Court of Common Pleas of Lawrence County
Civil Division at No(s): 10709 of 2012, C.A.

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED FEBRUARY 05, 2016**

C.P. ("Mother") appeals from the order entered on May 12, 2015, in the Lawrence County Court of Common Pleas, denying her petition to relocate to Austin, Texas, with her daughter, K.N.M. ("Child"), born in April of 2012.  The order also denied the petition filed by Child's father, J.F.M. ("Father"), seeking to modify the existing custody order.[1]  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows:

> The Plaintiff, [Father] and the Defendant, [Mother] are the natural parents of the minor child. . . .  Father initiated the instant custody action on June 12, 2012 by filing a Complaint in Custody.  Following a Custody Conciliation Conference, an

---

[1] Father has not challenged the denial of his petition for modification of custody.

agreed upon Custody Order was entered whereby Mother enjoyed primary custody of [Child], subject to Father's partial custody on Monday and Wednesday evenings and overnights every Friday. On April 22, 2013, Father petitioned to modify the existing Custody Order to increase his periods of partial custody. Following another Custody Conference, Father's partial custody increased to overnight visitation every Wednesday evening and every weekend from Saturday at 10:00 a.m. until Sunday at 8:00 p.m., in addition to extensive summer and holiday visitation. Father filed a second Petition for Modification on August 4, 2014, wherein Father requested primary physical custody of [Child]. On October 27, 2014, Mother filed a Petition to Relocate with the minor child to Austin, Texas. Father opposed Mother's relocation, and the [trial court] consolidated Mother's request to relocate and Father's request for primary physical custody for trial.

Trial Court Opinion, 5/12/15, at 1-2.

The trial court held the custody trial over five days in March and April of 2015. During the trial, on March 18, 2015, Father presented the testimony of Kirk Lunnen, Ph.D., who conducted a custody and psychological evaluation of the parties. On March 18, 2015 and March 19, 2015, Father presented the testimony of Child's paternal grandmother, R.M., who had notified Lawrence County Children and Youth Services ("CYS") about alleged potential health and safety concerns for Child at Mother's home. On March 18, 2015, Father presented the testimony of Gary Zarilla, who was the CYS Youth caseworker assigned to Child's case. On March 19, 2015 and March 27, 2015, Father testified on his own behalf. On April 16, 2015, Mother

testified on her own behalf. On April 23, 2015, Mother presented the testimony of her husband, J.M.[2]

The trial court summarized the testimony from the custody trial as follows:

> Doctor Kirk Lunnen, a psychologist employed by People In Need, conducted a custody and psychological evaluation of the parties. Dr. Lunnen's evaluation consisted of multiple interviews with the parties, Mother's current husband, the paternal grandparents, and a home visit of Mother's residence and Father's residence. Dr. Lunnen ultimately opined that the best interests of the minor child would be served by implementing a fifty-fifty division of physical custody between the parties. Dr. Lunnen stated that he reached his conclusion after considering each party's psychological evaluations, the parents' relationship with the [Child], the close proximity of the parties' residences, the ability of both Mother and Father to parent, and the parties' available support systems. Dr. Lunnen further opined that the minor child is developing appropriately and, so far, appears unaffected by the custody dispute between the parties.
>
> Father is currently twenty-three years old. Father resides with his parents, [R.M. and F.T.]. Father attends college at Youngstown State University full time, and he does not work. Father is completely reliant upon his parents for all of his financial support, including his monthly child support obligation of $100. Father is pursuing a degree in criminal justice. Father aspires to become a police officer. Father attends class every weekday at 10:000 [sic] a.m., and typically finishes his courses in the afternoon.
>
> Father and Mother met in high school. They dated for approximately three years prior to Mother becoming pregnant. Mother and Father remained close, but they did not maintain an exclusive relationship. Father was present for [Child's] birth, and he tried to assist Mother in caring for [Child] following her

---

[2] Although both Father and Mother presented other witnesses, these were the witnesses whose testimony the trial court found significant.

birth. Father stated that he helped assemble [Child's] crib, purchased clothing and baby items for [Child] and tried to assist Mother in feeding, clothing and comforting their child.

Although Father and Mother tried to maintain a cordial relationship, their efforts were strained by the presence of Mother's current husband, [J.M.]. When Father's relationship with Mother began to deteriorate, Father filed a custody complaint in an effort to secure a steady visitation schedule between himself and [Child].

Mother notified Father of her desire to move to Austin, Texas in the Fall of 2013. Father stated that Mother was vague about her intentions, and she seemed to only be considering the idea. Father stated that the petition to modify custody, most recently filed, was not initiated by his fear that Mother would move, but rather, because Father was concerned that [Child] was arriving at his residence with scratches, bug bites and lice on her body. Father stated that he felt Mother was not keeping her home clean, and that the animals in Mother's residence were causing [Child's] ailments.

[Child's] paternal grandmother, [R.M.], testified that [Child] has her own room at her residence. Father is the primary caregiver for [Child] when she is with Father, but [R.M.] enjoys assisting Father when [Child] is with him. [R.M.] stated that she has serious concerns about Mother's household because [Child] frequently came to her house with lice, bug bites, and severe rashes on her private parts. [R.M.] contacted Children and Youth Services of Lawrence County regarding her concerns and they proceeded to conduct an evaluation.

Gary Zarilla was the Children and Youth caseworker assigned to [Child's] case. Mr. Zarilla stated that when he initially visited Mother's residence, there was a lot of garbage and clutter. There were dishes piled up in the sink and several pets living in the house. Mr. Zarilla generally described Mother's house as "overwhelming", but he did not observe any definitive safety concerns. Mr. Zarilla asked Mother to try and improve the overall appearance and cleanliness of her house. Mother complied with Mr. Zarilla's request, and the conditions were drastically remedied upon Mr. Zarilla's follow-up visit. Mr. Zarilla did not initiate any dependency proceedings on [Child's] behalf.

Mother testified that she has been the primary care giver [sic] for [Child] since [Child's] birth. Following [Child's] birth, Mother returned to her mother's residence and lived with maternal grandmother until Mother obtained a residence with [J.M.]. Mother and [J.M.] subsequently married on August 28, 2014 and had a child together on November 28, 2014. Mother stated that her desire to relocate is primarily based upon a job opportunity provided to her husband by her mother-in-law. Mother stated that she does not perceive Father as being a good provider for [Child], considering the fact that Father is completely dependent upon his parents for his financial needs. Mother believes that she and her husband could better provide for [Child] if they relocated to Austin, Texas because her husband would be working for his family's business and earning in excess of $3,000.00 per month.

Mother wishes to further her education and believes this could be more easily accomplished if she was permitted to relocate with [Child] to Austin, Texas. Mother stated that she is amicable [sic] to the idea of living with her in-laws, and Mother believes that [J.M.] and his family could provide an adequate support system for her children subsequent to moving.

[J.M.], Mother's husband, also testified on Mother's behalf. [J.M.] is twenty-three years old. In addition to Mother and [J.M.'s] child, [J.M.] stated that he loves and cares for [Child]. However, [J.M.] is also conscientious of his role as her step-father. [J.M.] does not intend to replace Father as a male figure in [Child's] life.

[J.M.] would like to move with his family to Austin, Texas so that he could work for his mother in her family restaurant. [J.M.] proposed that he and Mother could move into his mother's residence during their transition, and that they could save money to buy their own home. [J.M.] believes that his family could provide an adequate support system for Mother and her children.

Trial Court Opinion, 5/12/15, at 2-6.

In the order entered on May 12, 2015, the trial court denied Father's petition to modify the existing custody order and denied Mother's petition to

- 5 -

relocate to Austin, Texas, with Child. On June 10, 2015, Mother filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

In her brief on appeal, Mother raises five issues:

Issue I. Whether the trial court erred in finding that the Mother failed to meet her burden of establishing that the relocation to Austin, Texas, would be in the child's best interests and enhance the quality of life for the mother and the minor child[?]

Issue II: Whether the trial court erred as a matter of law in failing to take into consideration all of the relocation factors as set forth in 23 Pa.C.S.A. § 5337(h) in finding that "any benefit bestowed by relocation to Austin, Texas, could not outweigh the detrimental impact suffered by limiting Father's relationship with [Child] to summer and holiday visitations[?]"

Issue III. Whether the trial court erred in finding that the Mother failed or was required to exhaust all alternatives in Lawrence County to attempt to provide a financially stable lifestyle for her family before attempting to relocate to Austin, Texas[?]

Issue IV: Whether the trial court erred in failing to take into consideration as part of the mother's request for relocation that the father currently provides very minimal, if any, financial support for the minor child[?]

Issue V: Whether the trial court erred in finding that the father/daughter relationship could not be preserved if the mother relocated to Austin, Texas[?]

Mother's Brief at 4 (full capitalization omitted).

Initially, we observe that, as the custody trial in this matter was held in March of 2015, the Child Custody Act, 23 Pa.C.S. § 5321 *et seq.* (the "Act"), is applicable. *C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that if the custody evidentiary proceeding commences on or after

the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act

apply).

Our scope and standard of review is set forth below:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F.*, 45 A.3d at 443 (citation omitted).

We have also stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (*quoting*

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

In *M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we

observed the following regarding an abuse of discretion standard:

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error

of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. Section 5338 of the Act provides that, upon petition, a trial court may modify a custody order if it serves the best interests of the child. 23 Pa.C.S. § 5338.

Section 5323 of the Act provides for the following types of custody awards:

**(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323.

In ***A.V. v. S.T.***, 87 A.3d 818 (Pa. Super. 2014), this Court explained the trial court's duty to explain its custody decision. We opined:

> "**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. ***E.D.***, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. ***Id.***
>
> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." ***C.B. v. J.B.***, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). Section 5323(d) applies to cases involving custody and relocation. ***A.M.S. v. M.R.C.***, 70 A.3d 830, 835 (Pa. Super. 2013).
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***A.V.***, 87 A.3d at 822-823.

Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" ***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa. Super. 2012), (*quoting **Baldwin v. Baldwin***, 710 A.2d 610, 614 (Pa. Super. 1998)). As the party proposing the relocation, Mother had the

burden of establishing that the relocation will best serve the interests of the children as shown under the factors set forth in section 5337(h). *C.M.K.*, 45 A.3d at 427 n.1; 23 Pa.C.S. § 5337(i)(1). Each party had the burden of establishing the integrity of his or her motives in either seeking or opposing relocation. *C.M.K.*, 45 A.3d at 427 n.1; 23 Pa.C.S. § 5337(i)(2).

In *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011), our Court explained that in any child custody case, the primary concern is the best interests of the Child. Section 5328(a) of the Act sets forth the best interest factors that the trial court must consider. *E.D. v. M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011). Further, with regard to relocation, "Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child." *E.D.*, 33 A.3d at 81 (emphasis in original). Here, because Mother is seeking to relocate with Child, the trial court was required to consider both the section 5328(a) custody/best interest factors and the section 5337(h) relocation factors.

The trial court addressed the custody/best interest factors under section 5328(a), and found:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

Father and Mother both encourage and permit contact between the other party and the minor child. Father and Mother have testified to times when they were able to modify the [c]ourt[-]ordered custody arrangements without incident, but

- 10 -

Father does become frustrated that Mother is not willing to comply with Father's requests.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

There has not been sufficient evidence to warrant a finding of abuse committed by either party toward each other or the minor child.

(3) The parental duties performed by each party on behalf of the child.

Both Mother and Father perform all the necessary tasks associated with raising the minor child when they are exercising custody. Mother and Father both play a strong role in caring for the minor child since the minor child's birth. Mother and Father both demonstrate a present willingness and capability to care for [Child].

(4) The need for stability and continuity in the child's education, family life and community life.

The minor child has always lived primarily with Mother, but Father enjoys a liberal partial custody schedule. The parties currently live very close to each other, and this provides for easier transitions during custody exchanges. [Child] is less than three years old, so the [c]ourt's consideration of [Child's] need for stability and continuity is limited to [Child's] home life at Mother's residence and Father's residence.

(5) The availability of extended family.

Father has a very strong support system in the Lawrence County area. Father lives with his parents, who play a substantial role in [Child's] upbringing. Mother's family support in Lawrence County is limited to maternal grandmother and Mother's current husband, [J.M.].

(6) The child's sibling relationships.

[Child] is the only child born between the parties. Mother's second child, [L.M., a son born in November of 2014] to her current husband is [Child's] half-sibling. Although L.M. is very young, the testimony established that [Child] enjoys being around her half-brother. Any custody arrangement entered must foster this relationship.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

Based on the child's age, this factor shall not be considered by the [c]ourt in reaching a determination.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

The testimony presented did not include sufficient evidence to support a finding regarding a party's attempt to turn the child against the other parent. The [c]ourt will not consider this factor in its determination.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

Both Mother and Father are able to provide the minor child with a loving and stable environment. Furthermore, the [c]ourt is satisfied that both Mother and Father care for the minor child's emotional needs while she is in their custody.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Similar to the [c]ourt's determination under subsection nine, both Mother and Father are able to attend to the minor child's daily needs. The [c]ourt recognizes that Father is extremely dependent upon his parents for his own physical, educational and financial needs, and thus, the minor child is also when she is in Father's custody. Alternatively, however, Mother is dependent upon her husband because [J.M.] is the only source of income in Mother's residence. The parties are extremely

- 12 -

young and their dependence upon others is indicative of their youth.

(11) The proximity of the residences of the parties.

The parties currently reside within two city blocks from one another. Father and Mother can easily walk to the other's residence. This fact promotes a very liberal custody schedule even when [Child] becomes of school age because the parties reside in the same school district.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

The [c]ourt is satisfied that both parties are able to care for the minor child while she is in their custody. Father's testimony establishes that Father has a stronger support system because of his parents and extended family. Mother, however, can rely upon [J.M.] for assistance, and after observing [J.M.] during his testimony, the [c]ourt finds [J.M.] to be very sincere and dependable in this regard.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

Each party testified that there can be high levels of conflict and poor communication between them. Mother has displayed poor temperament when communicating with Father, which in turn causes Father to be despondent. Mother and Father have attended communication/co-parenting counseling, which helped them for a short period of time.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

Father previously had one Driving While Under the Influence charge in 2013. Father completed the ARD program without further incident. Mother has no involvement with drug abuse or improper alcohol use.

(15) <u>The mental and physical condition of a party or member of a party's household.</u>

Mother and Father are both in good physical and mental health.

Trial Court Opinion, 5/12/15, at 13-18 (emphasis in original).[3]  Moreover, the trial court addressed the relocation factors set forth in section 5337(h), finding as follows:

(1) <u>The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.</u>

[Child] has a very strong relationship with Mother and Father.  Mother has served as the primary caregiver since [Child] was born, but Father has been actively involved in parenting [Child] following her birth.  The evaluation submitted by Dr. Lunnen establishes that [Child's] relationship with each parent is healthy and well-established.

(2) <u>The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.</u>

[Child] is presently three years old.  She is developing normally and appropriately; and, therefore, has no special needs.  The [c]ourt does believe[,] however, that [Child] is old enough to be cognitive of the drastic changes relocating to Austin, Texas would create.  Mother's proposed relocation will permit Mother to continue serving as [Child's] primary caregiver,

_____

[3] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services).  Although applicable at the time of the custody hearings in this matter, there was no evidence that would have required the trial court's consideration of this factor.

- 14 -

and [Child] is not old enough to experience a change in school system as a result of the move. The [c]ourt is concerned about the emotional impacts that [Child] could face because [Child] has a very strong relationship with Father and Father's family. This relationship would be negatively impacted by relocating because of the distance between New Castle, Pennsylvania and Austin, Texas.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

This factor creates significant concerns for the [c]ourt in evaluating Mother's request to relocate. Father currently enjoys custody of [Child] every Wednesday evening and every weekend. The parties could never maintain such a liberal visitation schedule if Mother moves with the minor child because of the distance and limited financial resources available to the parties. Although Mother proposes that Father could have extensive summer and holiday visitation, Mother could not articulate a viable plan to pay for the child's airfare or alternative transportation expenses. Even if the custody changes were effectuated, summer and holiday visitation could not adequately perverse [sic] Father's relationship with [Child] considering the fact that Father typically sees [Child] three to four days a week.

(4) The child's preference, taking into consideration the age and maturity of the child.

Given the child's young age, the parties did not offer the minor child's testimony in support of their respective positions. Therefore, this factor is not before the [c]ourt for consideration.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

There was insufficient evidence presented during these proceedings to warrant a finding that either party has tried to inhibit the minor child's relationship with the opposing party. In fact the [c]ourt received testimony that both Father and Mother place value on the other party in their parental role. The [c]ourt reaches this conclusion despite Father's contention that Mother

has been verbally aggressive and oppressive during several custody exchanges. The [c]ourt believes the disagreements sustained by the parties are not untypical of young parents who have opposing beliefs regarding the custody of a mutual child.

(6) <u>Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.</u>

Mother's proposed relocation is premised upon her husband's desire to obtain employment at his family's restaurant. [J.M.] testified that his mother offered him a position as head chief [sic]/manager of her restaurant, which would be a substantial increase in wages for [J.M.]. [J.M.] testified as to his efforts to obtain comparable employment in the Lawrence County and surrounding areas. [J.M.] stated that he was only able to secure a job at Wal-[M]art making $9.20 per hour. [J.M.] typically works thirty-three hours per week. [J.M.'s] current income is inadequate to financially support all of his family's needs, and [J.M.] and Mother rely on medical assistance and food stamps.

Mother believes that if she could move her family to Austin, Texas, [J.M.'s] increase in income could promote her family's financial security. Mother even speculates that she might be able to attend college after they move and become stabilized.

In considering the benefits proposed by Mother, the [c]ourt believes that, other than the possibility of improved financial security, Mother's quality of life would not drastically change. Mother is currently a full-time caregiver for her two children and homemaker. This would not change if Mother relocated. Mother's support system is primarily based in the local areas, and she would be completely dependent on [J.M.'s] extended family if they moved. If Mother and [J.M.] moved, they would be living with [J.M.'s] parents until they secured enough savings to purchase their own home.

Additionally, the [c]ourt believes that Mother's desire to attend college is not dependent upon moving, and that Mother could fulfill her desire to further her education locally.

- 16 -

(7) <u>Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.</u>

The [c]ourt's analysis under this factor is very similar to its preceding discussion under factor six. [Child] clearly has the opportunity to enjoy increased financial stability through her family, but it comes at the cost of leaving a well[-]established support system and relationship with Father. Although Mother did present testimony as to her proposed household and surrounding school district, the [c]ourt cannot conclusively infer that either would be better than Mother's current household and the schooling currently available to [Child].

(8) <u>The reasons and motivation of each party for seeking or opposing the relocation.</u>

Mother's desire to relocate is sincere; Mother believes that if her husband can obtain better employment, Mother and [J.M.] could create a better lifestyle for their children.

Alternatively, Father's objections to Mother's relocation are sincere. Father believes that if Mother moves to Austin, Texas with [Child] he will not play a strong parental role in [Child's] daily life.

(9) <u>The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.</u>

There has been no evidence regarding abuse committed by either party or that the minor child is at risk of harm in either household.

Trial Court Opinion, 5/12/15, at 8-13 (emphasis in original).

Mother argues that the trial court erred in failing to grant her request to relocate with Child to Austin, Texas, because the relocation was in Child's best interest, as it would enhance the quality of life for both her and Child. Mother claims that the most significant benefits of relocating would be that

Mother's husband, J.M., could work for his family's restaurant, thereby increasing the family income from approximately $900 per month to $3,000 per month. She asserts J.M. would have permanent employment as a chef at his family's restaurant, Mother could be a stay-at-home mother for Child and her other child, and Mother would have the potential to continue her education in a Texas college. Mother's Brief at 8-16.

The trial court considered each of these matters, and determined that they were not due any additional weight. As we explained above, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. *C.R.F.*, 45 A.3d at 443. We conclude that the trial court's conclusions are not unreasonable under the circumstances presented here. As we may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the sustainable findings of the trial court, we will not do so here. *Id*.

In her second issue, Mother contends that the trial court erred in finding that any benefit bestowed by relocation did not outweigh the potential detrimental impact suffered by limiting Father's relationship with Child to summer and holidays. Mother's Brief at 16-17. Mother claims that this finding gives greater weight to one specific factor and fails to consider all of the relocation factors equally. *Id.*

We find no merit to this contention. After review of the trial court's opinion, it is readily apparent that the trial court did not improperly give weight to one factor or fail to consider the other relocation factors. It was within the trial court's province to weigh the relocation factors and assess Child's best interest. *C.R.F.*, 45 A.3d at 443.

In her third issue, Mother asserts that the trial court erred in requiring Mother to exhaust all alternatives in Lawrence County, Pennsylvania, prior to attempting to relocate, as this is not a requirement prior to a party requesting relocation, and puts an unfair restriction or condition on the party. Mother's Brief at 17-19. Again, we find no merit to this contention. The trial court did not place any requirement on Mother in addition to the statutory relocation factors, but rather, found that the evidence related to those factors weighed against Mother. *C.R.F.*, 45 A.3d at 443.

In her fourth issue, Mother argues that the trial court erred in failing to take into consideration, as one of the relocation factors, that Father currently provides only minimal financial support for Child, in the amount of $100 a month. Mother's Brief at 19-20. In assessing factor ten of the custody/best interest factors under section 5328(a), the trial court stated:

> The [c]ourt recognizes that Father is extremely dependent upon his parents for his own physical, educational and financial needs, and thus, the minor child is also when she is in Father's custody. Alternatively, however, Mother is dependent upon her husband because [J.M.] is the only source of income in Mother's residence. The parties are extremely young and their dependence upon others is indicative of their youth.

Trial Court Opinion, 5/12/15, at 16.

In its opinion that accompanied the order denying Mother's petition to relocate, the trial court explained, "The [c]ourt believes that if Father finishes college, he will be in a better position to achieving independence." Trial Court Opinion, 5/12/15, at 20. We find no merit to Mother's contention that the trial court failed to consider the amount of financial support that she receives from Father for Child. The trial court properly weighed this evidence as one of the custody/best interest factors in relation to other considerations under 23 Pa.C.S. § 5337(h)(10). As repeatedly stated, it was within the trial court's province to weigh the relocation factors and assess Child's best interest. *C.R.F.*, 45 A.3d at 443.

In her fifth issue, Mother contends that the trial court erred in finding that the father-daughter relationship could not be preserved if Mother relocated to Austin, Texas, because there was nothing in the testimony to indicate that this relationship could not be preserved with the alternative partial custody offered by Mother. Mother's Brief at 20-21. In addressing this issue, the trial court concluded:

> After reviewing all of the statutory factors pertaining to Mother's request to relocate, in addition to the statutory factors pertaining to Father's request for modification, the [c]ourt determines that Mother's request to relocate must be denied. The [c]ourt bases its determination on the fact that [Child] has a very well-established relationship with both Father and Mother. [Child] enjoys regular and frequent contact with Father and his extended family, and the [c]ourt believes that any benefit bestowed by a relocation to Austin, Texas could not outweigh the detrimental impact suffered by limiting Father's relationship with

[Child] to summer and holiday visitation. In reaching this determination, the [c]ourt further considered the case of ***C.M.K. v. K.E.M.***, 45 A.3d 417 (Pa. Super. 2012). In ***C.M.K.***, the Superior Court of Pennsylvania affirmed the trial court's ruling that petitioner's/mother's request to relocate was not in the minor child's best interest because the relocation would substantially impair the respondent's/father's ability to preserve his strong parental relationship with the minor child. ***Id.*** at 427. The [c]ourt considered the fact that respondent/father was extremely involved in the minor child's life and participated in many of the child's daily activities. ***Id.*** Although petitioner/mother['s] request to relocate was from Grove City, Pennsylvania to Erie, Pennsylvania, a distance of only 68 miles, the trial court held, and the Superior Court agreed, that such a move presented de minimis improvements to the minor child's overall quality of life. ***Id.***

Furthermore, the [c]ourt finds that Mother's request is primarily premised upon [J.M.'s] desire to pursue a career opportunity with his family's restaurant. While Mother's objectives are sincere, the [c]ourt is not satisfied that Mother has exhausted reasonable alternatives to providing a more financially stable lifestyle for her family. Many of the additional benefits referenced by Mother could be achieved locally and are not subjective to relocation entirely.

Additionally, in evaluating Father's request to modify the current Custody Order, the [c]ourt believes that a modification is not appropriate at this time. Father wishes to implement a 50-50 custody schedule; however, Father has extensive commitments to his college education. Father attends classes daily, and the [c]ourt cannot realistically implement an equal custody schedule knowing that Father will not be available to care for [Child] for substantial periods of time. The [c]ourt believes that if Father finishes college, he will be in a better position to achieving independence.

The [c]ourt accredits Mother with being [Child's] primary caregiver, and the [c]ourt believes that in order to secure a consistent schedule, this arrangement should continue for a period of time. The [c]ourt believes that the issues raised by each party during these proceedings should cause the parties to strongly re-evaluate some of their parenting choices, and hopes that, following the entry of this Opinion, the parties could agree

to begin a fresh start to their co-parenting and communication methods.

Trial Court Opinion, 5/12/15, at 18-20.

We conclude that Mother's argument lacks merit. The trial court properly considered all of the custody/best interest and relocation factors and determined that Mother failed to sustain her burden of establishing that the third relocation factor, 23 Pa.C.S. § 5337(h)(3), should be weighted in Mother's favor. The trial court held:

> Although Mother proposes that Father could have extensive summer and holiday visitation, Mother could not articulate a viable plan to pay for the child's airfare or alternative transportation expenses. Even if the custody changes were effectuated, summer and holiday visitation could not adequately perverse [sic] Father's relationship with [Child] considering the fact that Father typically sees [Child] three to four days a week.

Trial Court Opinion, 5/12/15, at 9.

The trial court properly weighed this evidence as part of its assessment of the first, second, and third relocation factors. 23 Pa.C.S. § 5337(h)(1), (2), and (3). It was within the trial court's province to weigh the relocation factors and assess Child's best interest. *C.R.F.*, 45 A.3d at 443.

In her brief, Mother sets forth the ten relocation factors, casting the facts in a light most favorable to herself. Mother asserts:

> When evaluating all of the factors associated with the relocation and in viewing those as to what is in the best interests of the minor child, . . . it clearly establishes that the Trial Court erred in finding that the mother failed to meet her burden of

- 22 -

establishing that the relocation to Austin, Texas, was in the minor child's best interests.

Mother's Brief at 15.

Mother argues that the trial court improperly considered the **C.M.K.** case as precedent, and she argues that **C.M.K.** is inapplicable to the instant appeal. We do not agree. Although Mother desires that the relocation factors are weighted in her favor, the trial court must consider **all** of the factors on a case-by-case basis and make a decision that is in the best interest of the child, taking into account the child's physical, intellectual, moral, and spiritual well-being. **S.J.S. v. M.J.S.**, 76 A.3d 541, 554 (Pa. Super. 2013) (citation omitted) (emphasis added). In **S.J.S.**, a panel of this Court affirmed the denial of a mother's petition to relocate with her two minor daughters from Erie County, Pennsylvania, to Buckingham, Bucks County, Pennsylvania. The panel stated:

> No doubt, the cost and logistics of [the father] maintaining contact with his daughters from across the state would weigh against relocation unless other factors militated strongly in favor [of relocation]. We agree with the trial court that there is little to favor relocation here. The children are doing well in school and their activities, they have a strong bond with their [f]ather and their extended families in Erie, [the mother's] employment prospects in Buckingham are nebulous at best, and [the mother's] motives for moving do not appear to be driven by her children's best interests.

**S.J.S.**, 76 A.3d at 554.

After a careful review of the record in this matter, including the testimony and documentary evidence, the parties' briefs, and the relevant

law, we find no error or abuse of discretion on the part of the trial court in finding that Mother failed to sustain her burden in the present appeal. As in ***S.J.S.***, Mother failed to present sufficient evidence to convince the trial court that her relocation with Child to Austin, Texas, was driven by Child's best interest, as opposed to her own. Accordingly, we affirm the order of the trial court denying Mother's petition for relocation.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016